In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00280-CR
_____

JOHN BRADFORD SCOTT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 14-09-10368 CR

MEMORANDUM OPINION

A jury found John Bradford Scott (Scott or Appellant) guilty of unlawful possession of a firearm by a felon and found the enhancement paragraphs of the indictment to be "true." The jury assessed punishment and the trial court sentenced Scott to twenty-five years of confinement. Scott raises six issues on appeal. In his first issue, Scott challenges the legal sufficiency of the evidence supporting his conviction. In his second issue, Scott asserts the trial court erred in allowing

testimony of Scott's extraneous offenses during the guilt/innocence phase. In his third and fourth issues, Scott alleges the trial court erred and abused its discretion in not suppressing certain statements made by Scott. In his fifth issue, Scott asserts the evidence was factually insufficient to support the jury's finding of "true" on one of the enhancement allegations. And, in his sixth issue, Scott contends that the punishment he received is illegal. We affirm.

## THE INDICTMENT

The State charged Scott by indictment with unlawful possession of a firearm and alleged two prior felony convictions for the purpose of enhancement of punishment, as follows:

> . . . John Bradford Scott, the Defendant, on or about September 20, 2014, and before the presentment of this indictment, in the County and State aforesaid, did then and there, after being convicted of the felony offense of Possession of Controlled Substance, on March 27, 1991, in cause number 90-05-00398-CR, in the 359th District Court of Montgomery County, Texas, and after the fifth anniversary of the defendant's release from confinement or parole or community supervision or mandatory supervision following conviction of said felony, intentionally or knowingly possess a firearm at a location other than the premises at which the defendant lives, namely, County Line Road[.]

> Enhancement Paragraph A

> . . . Defendant, John Bradford Scott, was convicted of a felony, to wit: Forgery on March 8, 1985 in the 2nd 9th District Court of Montgomery County, Texas in Cause No. 17,843 under the name of

2

John Bradford Scott and said conviction became final prior to the commission of the aforesaid offense in Count I of this Indictment.

Enhancement Paragraph B

. . . Defendant, John Bradford Scott, was convicted of a felony, to wit: Armed Burglary on June 17, 1975 in the 208th District Court of Harris County, Texas in Cause No. 0228709 under the name of John Bradford Scott and said conviction became final prior to the commission of the aforesaid offense in Count I and Enhancement Paragraph A of this Indictment.

PRETRIAL

Scott pleaded "[n]ot guilty" to the offense of unlawful possession of a firearm. At a pretrial hearing, Scott urged his written motion to suppress in which he argued, among other things, that certain statements he made to law enforcement should be suppressed because at the time he made the statements he was under arrest or substantially deprived of his freedom, the statements he made were taken in violation of Article 38.22 of the Texas Code of Criminal Procedure, and the admission of the statements was a violation of his "rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section[s] 9 and 10 of the Texas Constitution and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure." The trial court heard evidence outside of the jury's presence and denied the motion to suppress the statements. And, the parties proceeded with the jury trial.

3

J.B. testified at trial that she was driving from Willis down County Line Road on the night of September 20, 2014, when she approached a truck "towards the ditch[]" and a trailer that had "kind of like jackknifed[]" across the road. According to J.B., she did not see the accident happen, but she was one of the first people on the scene. She testified that she watched the driver of the truck "tak[e] stuff out of his truck, walk[] to the tree[-]line and toss[] and throw[] things out of the vehicle[,]" several times.  J.B. testified that she did not see Scott ever go check on the driver of the other vehicle that Scott's vehicle hit. According to J.B., law enforcement officers arrived on the scene and J.B. told one of the officers what she observed. J.B. explained that  the officers on the scene "went all around there and looked[]" while J.B. stayed in her vehicle with her granddaughter. J.B. acknowledged on cross-examination that the written statement she provided to law enforcement did not include anything about the driver throwing anything out of his vehicle.

Texas Department of Public Safety Trooper Esteban Martinez testified that he was working the night shift on September 20, 2014, when he was called out to a "crash . . . on County Line Road[]" in Montgomery County. The accident involved two vehicles, a truck pulling a trailer that was in the middle of the road and another vehicle that was located off the roadway and a few hundred feet away from the side

4

of the accident. According to Trooper Martinez, the truck hit the driver's side of the other vehicle, causing damage to the driver's side of the car and the driver's side of the truck and trailer. Trooper Martinez explained that the axle on the trailer was completely broken and the truck's back left side sustained "substantial damage[.]" Trooper Martinez testified that he approached the driver of the truck, whom Martinez identified at trial as Scott, who was sitting on the trailer with deputies. Although Martinez agreed that Scott complained of back pain and appeared to "look[] out of it[,]" Martinez testified that Scott did not appear to have any head wounds and Scott was able to converse intelligently with Martinez and was able to understand Martinez's questions. Martinez asked Scott what caused the accident and Scott responded that "he was driving westbound . . . coming from his home, going to Willis to pick up a bed and[,] as he was driving[,] [Scott] had a blowout and lost control of the truck."

After Trooper Martinez inquired about Scott's driver's license, Martinez was "pulled away" by a deputy who provided Martinez with information regarding what witnesses at the scene had told the deputies. Trooper Martinez testified that, based on the information he learned from the deputy, he questioned Scott about a pistol and asked Scott "if he would be surprised if I walked over to the woods and found a pistol on the ground[.]" Trooper Martinez explained that, at first, Scott did not admit

5

to tossing the gun. After Trooper Martinez told Scott that an eyewitness told the deputy she observed Scott walk to the area of the trees and she saw him put what looked like a pistol on the ground, Scott admitted to Martinez that Scott had walked over and thrown a pistol on the ground. Trooper Martinez testified that he sent the deputies to retrieve the pistol, which was located behind a pole in front of a fence line near a wooded area. Martinez agreed that the firearm was located where the witness reported seeing Scott go to try to hide something. In Martinez's opinion, Scott placed the pistol where Scott could easily go back and pick it up. According to Martinez, Scott never said the pistol was not his or that it was his wife's pistol.

Trooper Martinez asked Scott if Scott would consent to a search of his person and, after Scott consented, Trooper Martinez found two marijuana joints in a cigarette box in his pocket. An audio and video recording from Martinez's patrol car of his interaction with Scott at the scene was admitted into evidence without objection and published to the jury. Martinez arrested Scott and transported Scott to Conroe Regional Hospital for examination.

At trial, Trooper Martinez also identified State's Exhibit 14 as the pistol recovered at the scene, and Martinez indicated that he knew it was the same pistol because of the serial number on the back of the firearm. According to Martinez, the pistol was a "Jennings" firearm and the firearm was admitted into evidence. Trooper

Martinez testified that there was no registered owner for the firearm, and although he submitted the firearm for fingerprint testing, no fingerprints were found on the firearm.

Larry Melton, an investigator with the Montgomery County District Attorney's Office who holds a Master Peace Officer certification and is trained in crime scene investigation, fingerprints, and forensic photography, also testified for the State. Melton testified that Scott's fingerprints taken during trial matched those on a 1991 judgment included in Scott's pen packet for Scott's conviction in which he received a fifteen-year jail sentence for second-degree felony possession of a controlled substance.

Vickie Scott, appellant's wife at the time of the accident, testified for the defense. She explained to the jury that at the time of trial she and Appellant were separated. She testified that the gun that was admitted into evidence as the gun recovered from the accident scene was her gun and she purchased it from an individual named "Eric" several months prior to the accident but did not register the gun. Vickie stated that she believed the gun was a "Smith & Wesson[.]"

According to Vickie, earlier on the day of the accident, her thirteen-year-old son was outside and alerted her that there was a snake and Vickie shot at the snake on her front porch. She testified that she missed the snake and, because she did not

7

want her son around the gun, she removed the magazine out of the gun and secured both in the glove compartment of the truck that she and her husband had just purchased from a neighbor. She explained to the jury that she put the gun and magazine in the glove compartment instead of the safe in the house where the gun was usually kept because the glove compartment was closer. Vickie testified that she did not tell her husband that she had put the gun in the glove compartment and she intended to retrieve it later but fell asleep, and she did not know her husband was going to take the truck to pick up furniture later that night. Vickie testified that she knew her husband had been convicted of a felony in the past, and that her husband was not aware that the gun was in the truck on the day of the accident.

Appellant Scott testified on his own behalf. According to Scott, on the evening of September 20, 2014, while driving his truck and trailer, the trailer had a blow-out on one tire and he had a near head-on collision with another vehicle. Scott explained to the jury that he first went and checked on the driver of the other vehicle and retrieved her cell phone. He testified that after other people were with the other driver, Scott then returned to his vehicle to clear it from the roadway and noticed the glove compartment door was open when he noticed the pistol in the glove compartment. Scott testified that he was unable to clear his vehicle from the roadway because the vehicle was "[t]otaled[]" and not functioning. According to Scott, until

8

then, he did not know the pistol was in the glove compartment. Scott testified that, he "panicked[,]" and he took the pistol and "place[d] it off the side of the road to try to avoid this fiasco at the time." Scott acknowledged that he never told Trooper Martinez that the gun belonged to Scott's wife. Scott admitted that he pleaded guilty in 1998 to possession of a firearm by a felon. Scott also agreed that "if they lumped [a charge of making a misrepresentation to a firearms dealer] in, I'm sure I pled guilty to it[,]" but Scott stated that he did not actually remember pleading guilty to the charge for misrepresentation.

The jury found Scott guilty as charged. Scott pleaded "[n]ot true" to the enhancement paragraphs. The jury found both enhancements to be "true" and assessed Scott's punishment at twenty-five years of confinement. Scott appealed.

SUFFICIENCY OF THE EVIDENCE

In his first issue, Scott challenges the legal sufficiency of the evidence supporting the jury's guilty verdict. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In reviewing sufficiency challenges, we are required to give the jury's findings and its conclusions

deference, as it was the jury's responsibility to fairly resolve all conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to resolve whether the defendant is guilty of violating the criminal provision that is at issue at trial. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

"Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey v. State*, 473 S.W.3d 805, 808-09 (Tex. Crim. App. 2015) (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13)). "'When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination.'" *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (quoting *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014)). The jury, as the judge of the facts and credibility of the evidence, may choose to believe or not believe the witnesses, or any portion of their testimony, despite contradictory evidence. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (citing *Esquivel v. State*, 506 S.W.2d 613 (Tex. Crim. App. 1974)).

A felon commits unlawful possession of a firearm "if he possesses a firearm . . . after conviction and before the fifth anniversary of the person's release from

10

confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later[.]" Tex. Penal Code Ann. § 46.04(a)(1) (West 2011). The statutory elements of unlawful possession of a firearm by a felon, as modified by the allegations in the indictment, are as follows: (1) defendant (2) having been previously convicted of a felony (3) intentionally or knowingly (4) possessed (5) a firearm (6) before the fifth anniversary of his release from confinement. *Id*. §46.04(a). On appeal, Appellant challenges only the element of possession.

"We analyze the sufficiency of the evidence in cases involving possession of a firearm by a felon under the rules adopted for determining the sufficiency of the evidence in cases of possession of a controlled substance." *Corpus v. State*, 30 S.W.3d 35, 37-38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Young v. State*, 752 S.W.2d 137, 140 (Tex. App.—Dallas 1988, pet. ref'd)). The Penal Code defines "possession" as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2016). Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b) (West 2011). To obtain a conviction for possession of a firearm, the State must show that the accused not only exercised actual care, control, or custody of the

firearm, but that he was conscious of his connection with it and possessed it knowingly. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.). "[E]vidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown*, 911 S.W.2d at 747. However, these affirmative links must demonstrate that "the accused was aware of the object, knew what it was, and recognized his or her connection to it." *Smith*, 118 S.W.3d at 842 (citing *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.)). The evidence showing these links may be direct or circumstantial, but the evidence must establish that the connection between the accused and the firearm is more than fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005); *cf. Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Presence or proximity, when combined with other evidence, can be sufficient to establish knowing possession. *Evans*, 202 S.W.3d at 162.

Affirmative links to the firearm may circumstantially establish an accused's knowing possession of a firearm including, without limitation: (1) his presence when a search is conducted, (2) whether the firearm was in plain view, (3) whether the firearm was in close proximity to him and he had access to the firearm, (4) whether he had a special connection to the firearm, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7)

12

whether he attempted to flee, (8) whether he made furtive gestures, (9) whether he owned or had the right to possess the place where the firearm was found, (10) whether the place where the firearm was found was enclosed, (11) whether conflicting statements on relevant matters were given by the persons involved, and (12) whether his conduct indicated a consciousness of guilt. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Bates v. State*, 155 S.W.3d 212, 216-17 (Tex. App.—Dallas 2004, no pet.); *Smith*, 118 S.W.3d at 842. It is the logical force of the links, rather than the number of links, that is dispositive. *Evans*, 202 S.W.3d at 162; *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd).

According to Scott, few of the factors linked him to the firearm. Scott argues that the firearm was "found in the tree[-]line some distance from Appellant's vehicle[,]" and that although a witness saw Appellant go from his vehicle to the area where the firearm was located, "no witness saw Appellant place the firearm in the tree[-]line." Scott argues that, even if this Court finds that Scott was sufficiently linked to the firearm, "[t]he evidence at trial clearly showed that Appellant did not voluntarily possess the firearm as defined by Texas Penal Code § 6.01(b)[]" because after Scott became aware of the firearm he immediately terminated control over the firearm by removing it from his vehicle and placing the firearm in the woods.

13

Scott admitted that, at the time of the accident, the firearm was in the glove compartment of the truck and he was the only person in the vehicle at the time of the accident. Trooper Martinez testified and Scott agreed that Scott never told the Trooper that the firearm was not Scott's or that it belonged to Scott's wife. Scott stated at trial that he removed the firearm from the truck and "place[d] it off the side of the road to try to avoid this fiasco at the time[.]" Viewing all of the evidence in the light most favorable to the verdict, we conclude the jury had sufficient evidence of affirmative links between Scott and the firearm, and could reasonably conclude that Scott knowingly had "actual care, custody, control or management" of the firearm.

We disagree with Scott's assertion that the evidence at trial "clearly showed that Appellant did not voluntarily possess the firearm as defined by Texas Penal Code § 6.01(b)." Although Scott's wife Vickie testified the gun was hers and that she had placed the gun in the truck earlier that day without Scott's knowledge, and Scott testified that he was unaware the firearm was in the vehicle until after the accident when the glove compartment inside the truck fell open, this testimony does not make the evidence legally insufficient because the jury could have chosen not to believe the testimony of Scott or Scott's wife. The record contains evidence from which the jury reasonably could have concluded that Scott knew the firearm was in

14

the truck prior to the accident. Although Vickie testified she was separated from Scott at the time of trial, the jury could have disbelieved Vickie. To the extent there were conflicts created by the testimony, we review the evidence assuming the jury resolved conflicts in favor of the prevailing party. *See Evans*, 202 S.W.3d at 164 n.5; *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) ("[T]he evidence is not rendered insufficient simply because appellant presented a different version of the events."). Additionally, the jury could have concluded that Scott exercised actual "care, custody, control, or management" of the firearm when he physically removed the gun from the glove compartment and placed it in the tree-line to hide it. A trier of fact reasonably could have determined beyond a reasonable doubt that Appellant knew there was a firearm in the vehicle and the gun was within Appellant's actual care, custody, control, or management. *See Brown*, 911 S.W.2d at 747. Viewing all of the evidence in the light most favorable to the verdict, we conclude the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Dobbs*, 434 S.W.3d at 170. We overrule issue one.

## EXTRANEOUS-OFFENSE EVIDENCE

In his second issue, Scott argues that "[b]y allowing the admission of the federal felon in possession of a firearm and false statements to a firearms dealer extraneous offenses in Appellant's trial, through a witness other than Appellant, it

forced Appellant to have to forego his right not to testify to explain the admitted extraneous offenses." According to Scott, the trial court "was in essence permitting evidence of character conformity[]" and such evidence "is precisely the type of evidence that rule 404(b) seeks to disallow." On appeal Scott's only argument pertains to Rule 404(b) of the Texas Rules of Evidence.[1]

We review a trial court's decision to admit evidence and overrule objections for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343-44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)); *State v. Mechler*, 153 S.W.3d 435, 439-40

---

[1] On appeal, Scott does not make a separate challenge or argument that the evidence was also inadmissible under Rule 403. Rather, Scott argues, citing *Plante v. State*, 692 S.W.2d 487, 491 (Tex. Crim. App. 1985), that extraneous evidence may be admitted under Rule 404(b) only if a two-step test is satisfied: (1) the evidence must be relevant to a material issue other than the defendant's character, and (2) the evidence's probative value outweighs its prejudicial effect. As noted in this opinion, the two-step analysis currently utilized by the Court of Criminal Appeals to determine the admissibility of extraneous-offense evidence does not include a probative versus prejudicial balancing test. *See Rogers v. State*, 853 S.W.2d 29, 32-33 (Tex. Crim. App. 1993). In order to raise a Rule 403 complaint, the objecting party must make a 403 objection separate from its Rule 404(b) objection. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g). Additionally, the issue raised on appeal must comport with the objection raised at trial. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

(Tex. Crim. App. 2005). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz*, 279 S.W.3d at 344; *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). Furthermore, the erroneous admission or exclusion of evidence is generally reviewed under the standard for nonconstitutional error contained in Rule 44.2(b) of the Texas Rules of Appellate Procedure if the trial court's ruling merely offends the rules of evidence. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing Tex. R. App. P. 44.2(b)); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

Under Rule 44.2(b), even if the trial court erred in admitting the complained-of evidence, we may not overturn a criminal conviction for nonconstitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey v. State*, 215 S.W.3d 870, 885 (Tex Crim. App. 2007). In our determination of whether an error adversely affected the jury's decision, we consider everything in the record, including testimony, physical evidence, jury instructions, the State's theories, any defensive theories, closing arguments, and voir dire. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Tex. R. Evid. 404(b)(1). Rule 404(b) codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for other extraneous crimes. *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008).

To preserve error to the admission of extraneous offenses, the defendant must make a timely and proper objection at trial. *See Montgomery*, 810 S.W.2d at 387. Generally, the record must show that (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion (expressly or implicitly), or the trial judge refused to rule and the complaining party objected to that refusal. Tex. R. App. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).

"Rule 404(b) sets out an illustrative, not exhaustive, list of exceptions to the prohibition against admitting evidence of extraneous offenses including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Daggett v. State*, 187 S.W.3d 444, 451 n.13 (Tex. Crim. App. 2005) (quoting Tex. R. Evid. 404(b)) (emphasis omitted); *Prible v. State*, 175

S.W.3d 724, 731 (Tex. Crim. App. 2005). The Court of Criminal Appeals has explained that "'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz*, 279 S.W.3d at 343 (footnotes omitted) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) (discussing Fed. R. Evid. 404(b)).

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Texas courts utilize a two-step analysis for determining the admissibility of extraneous offenses or uncharged acts. *Rogers*, 853 S.W.2d at 32-33. Courts determine first whether the evidence is relevant to a material issue in the case and second whether the relevant evidence should be admitted as an exception to Rule 404(b). *Id.* A trial court's 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). For example, the evidence may be admissible to rebut a defensive theory or when the defense "opens the door." *Powell*, 63 S.W.3d at 439; *Halliburton v. State*, 528 S.W.2d 216,

19

218 (Tex. Crim. App. 1975); *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—

Texarkana 2007, no pet.); *Deleon v. State*, 126 S.W.3d 210, 216 & n.6 (Tex. App.—

Houston [1st Dist.] 2003, pet. ref'd).

During the State's cross-examination of Vickie regarding her testimony that

Appellant did not know she put the firearm in the truck on the day of the accident

and her statement that "[i]t was [her] fault[,]" the prosecutor asked to approach the

bench, and the prosecutor and defense counsel had the following exchange with the

trial court outside of the jury's hearing:

> [State's counsel]: Your Honor, at this point in time, I would like to cross-examine under 404 evidence. The Defendant was convicted of unlawful possession of a firearm by a felon under federal charges in 1998. She -- her testimony and the defensive theory here today is this is a mistake or accident. The ten-year rule that proves that the burden of -- the balance in 609 does not apply to Rule 404.
>
> . . . .
> THE COURT: Okay. I actually think 404([b]) is involved because it[]s absence of mistake or fact -- clearly absence of mistake or fact. Let me read her testimony. Hold on.
>     I think you still have to do a balancing test under 403. Even though it possibly is admissible, I still have to say that the probative value outweighs -- substantially outweighs the prejudicial effect.
>
> . . . .
>
>     But I actually think that was raised. I think some of the questions you elicited she's saying the gun is hers and she put it there after she shot a snake. She put it there for safekeeping and he didn't know the gun was there.

20

[Defense counsel]: Now, is he trying to introduce this charge against the Defendant that --? But he hasn't even testified.

THE COURT: Yes. In order to show knowledge or lack of mistake.

[Defense counsel]: I think it would go to -- it would be more directly relevant to when the Defendant testifies. And that's a witness that has apparently no criminal record.

. . . .

THE COURT: I am going to allow it.

[Defense counsel]: Judge, I would reiterate that any probative value would be substantially outweighed by the -- confusing the jury, unfair prejudice. I would re-urge the Court to exclude the testimony.

[State's counsel]: And, Judge, just for the record, she did blurt out unresponsive to a question, claiming that the Defendant did not know the gun was in the car.

THE COURT: She said it clearly. And then you objected to her -- the problem is it's out there. And she said a lot of things that were narrative to both of you. Because I don't think she understands. She's not a . . . professional witness.

[Defense counsel]: I think it's just going to confuse the jury, Judge. It's going to be so misleading that it's going to prejudice my client. Any probative value is strongly outweighed by the prejudice, Judge.

[State's counsel]: We have many priors on this defendant. If you look at the disclosures, we're only asking to address this prior felony possession charge and then the one that is predicated for this case itself, in 1991.

[Defense counsel]: 1991 is a possession of . . . drugs or something.

[State's counsel]: It goes directly to the 404([b]) issue that he put in play.

THE COURT: I think you're right. I'm going to let it come in over your objection.

The State then continued its cross-examination of Vickie. Vickie admitted that she knew Scott was a felon and that he had served prison time before, but when asked whether she knew that Scott had pleaded guilty in 1999 to federal charges of being a "felon in possession of a firearm", she responded "I didn't know him then." She also acknowledged that she knew "he had his mother's guns when she passed away." The State then showed Vickie an exhibit and asked Vickie if she was aware that Scott pleaded guilty in 1998 to federal charges for two counts of "unlawful possession of a firearm by a felon" and one count of "making false statements to a firearms dealer." Vickie responded, "No, I did not know that. But I am [aware of that] now." The exhibit that the State showed to Vickie was not offered into evidence or published to the jury.

At trial, Scott did not object to the evidence of the 1999 conviction or the 1998 conviction for making false statements to a firearms dealer. Scott only objected to the State's questioning of Vickie regarding the 1998 conviction of two counts of unlawful possession of a firearm by a felon.

22

We conclude that the trial court did not err in admitting the complained-of evidence. The trial court could have reasonably concluded that the evidence concerning Scott's prior federal convictions for unlawful possession of a firearm by a felon and making false statements to a firearms dealer would be relevant to rebut a defensive theory regarding mistake or accident and the evidence was not admitted "solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *See De La Paz*, 279 S.W.3d at 343. Because there was evidence that the complained-of extraneous conduct was relevant to a material, non-propensity issue, admission of such evidence is within the zone of reasonable disagreement. *See Devoe*, 354 S.W.3d at 469. We also note that the jury charge included a limiting instruction concerning evidence of extraneous crimes or bad acts, and we presume the jury followed this instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

Furthermore, even assuming the trial court had erred in admitting the complained-of evidence, we will not reverse the judgment if the error was harmless. *See* Tex. R. App. P. 44.2(a). Scott has failed to explain how he was harmed by the complained-of evidence. Based on the record before us, we believe there is little risk that the jury convicted Scott based on the complained-of extraneous offense evidence, rather than on the remainder of the evidence presented at trial that

23

supported the basis of the State's indictment. *See id*. We conclude the error, if any, in admitting this evidence did not affect a substantial right of Scott and must be disregarded. *See* Tex. R. App. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008); *Casey*, 215 S.W.3d at 885. We overrule issue two.

DENIAL OF MOTION TO SUPPRESS

In issues three and four, Scott argues that the trial court erred and abused its discretion in not suppressing Scott's statements to Trooper Martinez in violation of *Miranda v. Arizona* and Article 38.22 of the Texas Code of Criminal Procedure. In his written Motion to Suppress Statements and at the pretrial hearing on the motion, Scott asserted he was in custody at the time he made the statements and that his statements were taken in violation of Article 38.22. The State argued Scott was not in custody at the time of the statements and therefore the questioning by Trooper Martinez was not a custodial interrogation and *Miranda* warnings were not required. The trial court denied Scott's Motion to Suppress.

We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts" and review de

24

novo the court's application of the law to the facts. *Id.*; *see also State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013) (holding that appellate courts apply a deferential standard to the trial court's factual assessment of circumstances surrounding interrogation of a defendant and apply de novo review to the trial court's ultimate legal determination of whether a defendant was in custody). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). In a motion to suppress hearing, the trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

Under article 38.21, "the statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." Tex. Code Crim. Proc. Ann. art. 38.21(West 2005). Article 38.22 provides the framework of when

25

statements may be used. Written or oral statements made as a result of "custodial interrogation" will be inadmissible against the defendant if the defendant did not receive, prior to making such a statement, the warnings informing him that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at trial;
(2) any statement he makes may be used as evidence against him in court;
(3) he has the right to have a lawyer present to advise him prior to and during any questioning;
(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
(5) he has the right to terminate the interview at any time[.]

*Id.* art. 38.22, §§ 2(a) and 3(a) (West Supp. 2016). The legislature also included the following clarification expressly allowing statements to be used in the following circumstances:

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

*Id.* art. 38.22, §5 (West Supp. 2016).

"Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his

26

freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In determining whether a defendant was "in custody" for the purpose of applying *Miranda*, an appellate court "conducts a factual review in examining the circumstances surrounding the interrogation" and "makes an ultimate legal determination whether a reasonable person would not have felt at liberty to leave." *Saenz*, 411 S.W.3d at 493 (citing *Thompson v. Keohane*, 516 U.S. 99, 112-13 (1995)). "A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* at 496 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

The Court of Criminal Appeals has described "at least four general situations that may constitute custody:"

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id.* (quoting *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). The first three situations "require that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative

detention." *Id.* (quoting *Dowthitt*, 931 S.W.2d at 255). Although the fourth situation "requires an officer's knowledge of probable cause to be manifested to the suspect[,]" custody is not established unless that manifestation of probable cause "'combined with other circumstances' of the interview, such as duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.*(quoting *Dowthitt*, 931 S.W.2d at 255-57).

In making the custody determination, the primary question for the court is whether a reasonable person would perceive the detention to be a restraint on his movement "comparable to . . . formal arrest," given all the objective circumstances. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We do not consider the subjective beliefs of the detaining officer when determining whether a suspect is in custody. *Id.* at 372-73. However, the officer's subjective belief becomes relevant if the officer manifests his belief to the detainee that he is a suspect. *Id.* at 373. We do not consider any subjective belief of the suspect that he is guilty of an offense because "the reasonable person standard presupposes an 'innocent person.'" *Id.* (quoting *Dowthitt*, 931 S.W.2d at 254).

Scott was not given a *Miranda* warning until after he was placed in handcuffs and formally arrested. The relevant inquiry is whether he was in custody when he

28

made the statements about the firearm to Martinez. In asserting that he was in custody for purposes of *Miranda* and Article 38.22, Scott contends that the first law enforcement officers on the scene told Scott to wait by his truck and not to leave the scene until being told otherwise, and that a reasonable person under those circumstances would believe he or she was not free to leave.

Subsequent events in a roadside encounter may cause a noncustodial encounter to escalate into a custodial interrogation. *Dowthitt*, 931 S.W.2d at 255. Nevertheless, a person who is being held for an investigative detention is not in custody. *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.) (citing *Dowthitt*, 931 S.W.2d at 255). At the suppression hearing, the audio and video recording from Trooper Martinez's patrol car was offered as an exhibit and viewed by the trial court. The video depicted Martinez's interaction with Scott. Trooper Martinez testified that on September 20, 2014, when he arrived at the scene and as part of his investigation of the accident, he met with the driver of the truck and asked the driver to explain what caused the accident. According to Trooper Martinez, Scott told Martinez that the accident occurred when one of Scott's tires blew out, and Martinez then spoke with other officers at the scene and approached Scott again to ask if it would surprise Scott if the officers searched an area and found a pistol on the ground. According to Martinez, Scott said that there was nothing there

29

and, because Martinez had information that led him to believe otherwise, Martinez asked Scott again about the pistol and Martinez asked Scott to be honest. Martinez explained at the hearing that when he confronted Scott and continued to ask Scott about the gun, Scott admitted there was a pistol and that he had walked over to the tree-line and that he left the pistol there. According to Martinez, at the time Scott made these statements, Martinez was still conducting the investigation, Scott was standing behind his trailer, Scott was detained but not in custody or under arrest or in a patrol car, and Martinez had not handcuffed Scott or told him he was not free to leave. Martinez testified that Scott then gave Martinez consent to search, and Martinez placed Scott under arrest after finding a cigarette box containing marijuana in Scott's pocket. Scott admitted at the suppression hearing that, during Martinez's questioning, Scott was not in handcuffs, not in a police car, and had not been told he was under arrest. However, Scott testified, "I was told I couldn't smoke and don't move and all kinds of other things." According to Scott, he "was told to sit on that trailer until [Martinez] arrived. And then [Martinez is] the only one that told me to get up. But I was told by the other officers . . . to stay on the scene and not get up."

At the point Scott made the complained-of statement to Martinez, while Scott was subjected to an investigative detention, the trial court could have reasonably concluded that Scott was not in custody. *See generally State v. Stevenson*, 993

30

S.W.2d 857 (Tex. App.—Fort Worth 1999, no pet.). We cannot say that the trial court erred in concluding that the statements Scott sought to suppress were not obtained as a result of a custodial interrogation. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not err or abuse its discretion in denying Scott's motion to suppress Scott's statements. Issues three and four are overruled.

SUFFICIENCY OF THE EVIDENCE AS TO ENHANCEMENT
AND LEGALITY OF SENTENCE

In issue five, Scott challenges the factual sufficiency of the evidence supporting a finding of true on enhancement paragraph B submitted to the jury. Scott argues that there is a fatal variance in the proof at trial and the allegation in the indictment as to enhancement paragraph B.  In issue six, Scott contends that, due to a "fatal variance[,]" the State only properly proved one prior enhancement and therefore the applicable punishment range is two to twenty years in prison. Scott asserts his twenty-five-year sentence is outside the maximum allowable range.

The fatal variance doctrine applies to enhancement allegations. *Human v. State*, 749 S.W.2d 832, 837 (Tex. Crim. App. 1988). However, enhancement allegations need not be alleged with the same particularity that must be used in charging a primary offense. *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). For example, in *Freda*, the Court of Criminal Appeals held that even though

31

an enhancement paragraph in the indictment had alleged that a defendant had a prior conviction for bank robbery, and the proof showed a prior conviction for conspiracy to commit robbery, there was no fatal variance because the defendant did not show that he was surprised to his prejudice. *Id.* at 43. The Court noted that the indictment had correctly alleged the date of the prior offense, the cause number of the prior offense, the court that returned the conviction for the prior offense, the location of the convicting court, and the fact that the offense was a felony. *Id*. When there is a variance between the enhancement allegation and the proof offered regarding the prior conviction, the variance is fatal and requires reversal only if the variance was such that the defendant was misled to his prejudice. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995); *Plessinger v. State*, 536 S.W.2d 380, 381 (Tex. Crim. App. 1976).

In the present case, during the punishment phase the State introduced a judgment of conviction for Scott with the same date of conviction, same cause number, and same trial court as that alleged in enhancement paragraph B, and the judgment and enhancement paragraph B indicate that the offense was a felony. However, enhancement paragraph B also refers to the offense of "Armed Burglary[,]" whereas the judgment of conviction that was introduced into evidence states the conviction was for the offense of "Burglary of a building with intent to

commit theft[.]" Scott argues that *Freda* is inapplicable because "the State alleged a conviction for a crime that has never existed in the State of Texas[.]" We conclude that as in *Freda*, the variance was not fatal. The indictment in the case at bar correctly alleged the date of the prior offense, the cause number of the prior offense, the court returning the conviction for the prior offense, the location of the convicting court, and the fact that the offense was a felony. *See Freda*, 704 S.W.2d at 43. Furthermore, the indictment referenced a "Burglary."

Additionally, Appellant has failed to show that he was surprised to his prejudice by the variance between the indictment and the proof. *See id.* (variance between indictment alleging prior offense of bank robbery and the prior offense proved of conspiracy to commit bank robbery was not fatal variance absent showing defendant was surprised to his prejudice); *see also Tenner v. State*, 850 S.W.2d 818, 820-21 (Tex. App.—El Paso 1993, no pet.) (variance between indictment alleging enhancement for prior conviction for aggravated robbery and proof of enhancement for robbery was not fatal variance absent showing of surprise to defendant's prejudice). The evidence was sufficient to support the jury's finding of true on enhancement paragraph B. Issue five is overruled. Because Scott's sixth issue is entirely dependent on his fatal variance argument in issue five and we have

concluded no fatal variance exists, we also overrule issue six. *See* Tex. R. App. P.

47.1. We affirm the trial court's judgment.

    AFFIRMED.


                      _____

                          LEANNE JOHNSON
                                Justice

Submitted on August 1, 2016
Opinion Delivered November 2, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.